IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Ocala, Florida |
| Plaintiff, | Case No. 5:20-cr-40-Oc-28PRL |
| vs. | September 9, 2020 |
| CHRISTINA LYNN CATALANO, JOSEPH SAMUEL CATALANO, | 11:53 a.m. |
| | Courtroom No. 1A |
| Defendants. | |

DIGITALLY RECORDED INITIAL APPEARANCE AND ARRAIGNMENT
BEFORE THE HONORABLE PHILIP R. LAMMENS
UNITED STATES MAGISTRATE JUDGE

GOVERNMENT COUNSEL:

**MICHAEL FELICETTA, ESQ**.
US Attorney's Office - FLM
35 SE 1st Avenue, Suite 300
Ocala, FL  34471

**DEFENSE COUNSEL**:

**CHRISTINE NAN BIRD, ESQ**.  (Christina Lynn Catalano)
Federal Public Defender's Office
201 SW 2nd Street, Suite 102
Ocala, FL  34471

**MICHAEL WILLIAM NIELSEN, ESQ**.  (Joseph Samuel Catalano)
Nielsen Law Firm
720 W SR 434
Winter Springs, FL  32708

COURT REPORTER:

Shannon M. Bishop, RDR, CRR, CRC
221 North Hogan Street, #150
Jacksonville, FL  32202
Telephone:  (904)549-1307
dsmabishop@yahoo.com

(Proceedings recorded by mechanical stenography; transcript produced by computer.)

<u>P R O C E E D I N G S</u>

September 9, 2020                                           11:53 a.m.

- - -

THE COURT: We have scheduled for today a hearing in the *United States verse Christina Lynn Catalano and Joseph Samuel Catalano*. The government is represented by Mr. Felicetta.

And who joins you, Mr. Felicetta?

MR. FELICETTA: Thank you, Your Honor. Special Agent Billier from the Department of Homeland Sec- -- Homeland Security Office of Inspector General is here.

THE COURT: All right. We have Ms. Bird here to be appointed to represent Ms. Catalano. Ms. Bird is an Assistant Federal Public Defender.

And then we have Mr. Nielsen here to be appointed to represent Mr. Catalano. Mr. Nielsen is with our Criminal Justice Act panel. And both are here because they've agreed to appointments, if you both need attorneys.

You are both here because a federal grand jury has returned an indictment against you both.

Mr. Catalano is named in Count Two and Ms. Catalano is named in Counts One and Two.

Do you both have a copy of the indictment?

DEFENDANT J. CATALANO: Yes. Yes, Your Honor.

THE COURT: All right. In this proceeding this

1 afternoon we'll talk about the charges against both of you, as
2 well as the potential penalties and certain rights that you
3 have.
4       If there is anything I say that you don't understand,
5 or if you need to talk to the lawyer sitting next to you,
6 please let me know that.
7       I'll advise you both that you do each have a right to
8 remain silent.  That means you're not required to make any
9 statements to the Court or to law enforcement.  And you should
10 know that if you do make a statement, it can be used against
11 you.
12       Do you both understand that?
13       DEFENDANT C. CATALANO:  Yes, sir.
14       DEFENDANT J. CATALANO:  Yes, sir.
15   (Inaudible.)
16       DEFENDANT C. CATALANO:  Yes.
17       THE COURT:  Ms. Catalano, let me ask you first:  Are
18 you clear-headed today?  Do you understand where you are,
19 what's going on, and the importance of today's proceeding?
20       DEFENDANT C. CATALANO:  Yes, sir.
21       THE COURT:  And the same question to you,
22 Mr. Catalano.
23       DEFENDANT J. CATALANO:  Yes, Your Honor.
24       THE COURT:  So Count One of the indictment charges
25 just Christina Catalano.  And it states that between on or

1  about September 15th, 2017, and November 20th, 2017, in the
2  Middle District of Florida -- so you're in -- and Ocala is the
3  Middle District of Florida.  And that's Marion, Sumter, Citrus
4  and Lake counties.
5           So in the Middle District of Florida and elsewhere,
6  that Ms. Catalano knowingly made a material false, fictitious,
7  and fraudulent statement and representation, in any matter
8  involving any benefit authorized, transported, transmitted,
9  transferred, disbursed, and paid, in and affecting interstate
10 commerce, said benefit being a record, voucher, payment, money,
11 and thing of value of the United States and the Federal
12 Emergency Management Agency, otherwise known as FEMA, which is
13 a department and agency of the United States, in connection
14 with a major disaster declaration, which was made under
15 Title 42 of the United States Code, in that Ms. Catalano made a
16 fraudulent application for assistance from FEMA's Individuals
17 and Households Program for Hurricane Irma, in which she falsely
18 represented the existence and location of her primary
19 residence.
20          That offense is in violation of Title 18 of the
21 United States Code, Section 1040.
22          Then Count Two is as to both defendants.  And that
23 says that on or about January 31st, 2020, in the Middle
24 District of Florida and elsewhere, that both defendants,
25 Mr. Catalano and Ms. Catalano, did knowingly and willfully make

1  a materially false, fictitious, and fraudulent statement and
2  representation in a matter within the jurisdiction of the
3  Executive Branch of the government of the United States by
4  making false statements to an agent of the United States
5  Department of Homeland Security, Office of the Inspector
6  General, that Christina Catalano lived in a travel trailer that
7  was destroyed by Hurricane Irma.  The statements and
8  representations were false because, as Christina Catalano and
9  Joseph Catalano then and there knew, there was no such travel
10 trailer and the alleged damage from Hurricane Irma was
11 fabricated in order to defraud the government.
12         Those false statements are a violation of Title 18 of
13 the United States Code, Section 1001, subsection (a)(2).
14         Ms. Catalano, do you understand what you are charged
15 with?
16         DEFENDANT C. CATALANO:  Yes, sir.
17         THE COURT:  Mr. Catalano, do you understand what you
18 are charged with?
19         DEFENDANT J. CATALANO:  Yes, Your Honor.
20         THE COURT:  Mr. Felicetta, what are the potential
21 penalties for these two offenses?
22         MR. FELICETTA:  Thank you, Your Honor.
23         A violation of Count One, that is a violation of
24 Title 18, Section 1040, carries with it the penalty of up to 30
25 years' imprisonment, a fine of up to $250,000, and carries with

1  it a requirement to pay restitution, if warranted, to the
2  United States.  It carries also a $100 special assessment.
3           The conviction under Count Two, that is a violation
4  of Title 18, Section 1001, carries with it the penalty of
5  incarceration of up to five years, a fine of up to $250,000,
6  and a $100 special assessment.
7           THE COURT:  What about supervised release?
8           MR. FELICETTA:  There is a term of supervised
9  release, Your Honor.
10          THE COURT:  Would it be up to three years for both?
11          MR. FELICETTA:  Yes, Your Honor.
12          THE COURT:  All right.  Ms. Catalano, if you were
13 convicted of Count One, the maximum penalty -- that is, the
14 most the judge could give you -- would be 30 years'
15 imprisonment; for Count Two, it would be five years.  Each
16 count -- you could also be fined as to each count up to
17 $250,000.  You'd have to make a $100 special assessment payment
18 on each count.
19          You would be ordered to make restitution for any loss
20 to the United States or any victim of the offense.  And you
21 could be subject to a term of supervision, which is -- if you
22 served a period of imprisonment, when you got out, you would
23 still be monitored by a probation officer.  And the maximum
24 term of supervision would be up to three years.
25          Mr. Catalano, as for you, the maximum term of

imprisonment on the counts you are charged in is five years. And then there's the same $250,000 fine potential for that count, a $100 special assessment, and up to three years of supervision.

    Ms. Catalano, do you understand what you're charged -- I'm sorry, what the potential penalties are?

    DEFENDANT C. CATALANO:  Yes, sir.

    THE COURT:  Mr. Catalano, do you as well?

    DEFENDANT J. CATALANO:  Yes, Your Honor.

    THE COURT:  You both have a right to represent yourselves, but you also have a right, of course, to be represented by a lawyer.  If you cannot afford an attorney, the Court can appoint an attorney to represent you at no cost.

    I have on the bench a financial affidavit for both of you.

    Ms. Catalano, yours notes no significant source of employment, income, cash, or property.  And it appears to be signed by you.

    And the same is true for yours, Mr. Catalano?

    DEFENDANT J. CATALANO:  Yes, Your Honor.

    THE COURT:  Ms. Catalano, did you provide the information on this form and sign it at the bottom?

    MR. FELICETTA:  Yes, sir.

    THE COURT:  And would you like me to appoint an attorney to represent you?

```
 1                DEFENDANT C. CATALANO:  Yes, sir.
 2                THE COURT:  And the same for you, Mr. Catalano.  Did
 3   you sign this?
 4                DEFENDANT J. CATALANO:  Yes, sir.
 5                THE COURT:  And would you like me to appoint an
 6   attorney?
 7                DEFENDANT J. CATALANO:  Yes, Your Honor.
 8                THE COURT:  I find that you both qualify for the
 9   appointment of counsel under the Criminal Justice Act.  I will
10   appoint Ms. Bird to represent you, Ms. Catalano; and
11   Mr. Nielsen to represent you, Mr. Catalano.
12                You both have a right to plead guilty in this case.
13   You should know if you entered a plea of guilty that would be
14   an admission of the truth of the charges against you.  If you
15   pled guilty, there would not be a trial.  And on your guilty
16   plea, you would be found guilty.  And the next proceeding would
17   be a sentencing.  You, of course, both have a right to plead
18   not guilty and to maintain a plea of not guilty.
19                You would have the following rights under the
20   Constitution and laws of the United States.  You have the right
21   to a speedy trial.  Generally that means you'll be tried within
22   70 days of your first appearance or the date of the indictment,
23   whichever is later.
24                You both have a right to a public trial and to be
25   tried by a jury of 12 jurors.  All of the jurors must
```

unanimously agree on your guilt before you can be convicted.

You are both presumed innocent.  The United States must prove your guilt beyond a reasonable doubt.

You both have the right to confront and cross-examine each of the government witnesses called against you.  And you have a right to challenge the government's evidence.

You both have a right to present your own evidence and to call your own witnesses.  And the Court can compel the attendance of your witnesses.

You each have a right to testify at trial, but you also have a right to remain silent.  No one can force you to testify.  And if you are convicted, you do have a right to appeal.

THE COURT: Ms. Catalano, do you understand those rights?

DEFENDANT C. CATALANO: Yes, Your Honor.

THE COURT: You as well, Mr. Catalano?

DEFENDANT J. CATALANO: Yes, Your Honor.

THE COURT: Ms. Bird, is there any reason your client should not enter a plea at this time?

MS. BIRD: No, Your Honor.

THE COURT: And how does she plead?

MS. BIRD: Not guilty.

THE COURT: Mr. Nielsen, any reason why your client should not enter a plea at this time?

MR. NIELSEN: No, Your Honor.

1   THE COURT: And how does he plead?
2   MR. NIELSEN: He pleads not guilty, sir.
3   THE COURT: I will record a plea of not guilty as to
4   both defendants. This case is assigned to Judge Antoon. It's
5   scheduled for his November trial term, which begins November
6   2nd, 2020. He does have a status conference set for
7   October 23rd, 2020, at 10 a.m.
8   You both have a right to a bond hearing. That is a
9   hearing to determine whether you are eligible for a bond and,
10  if so, on what terms and conditions, or if you should be held
11  in custody because you are a risk of flight or non-appearance
12  or a danger to the community, or both.
13  Mr. Felicetta, let me start with you. What is the
14  government's position on the issue of bond?
15  MR. FELICETTA: Thank you, Your Honor.
16  Judge, I've reviewed the pretrial services report.
17  I've had a chance to speak to Officer Martin. And I've
18  consulted with the government's agent with the criminal history
19  records of both defendants.
20  Mr. Catalano is 54 years old, is from Chicago
21  originally, but has significant ties to this district.
22  Ms. Catalano is 38 years old. She has an extensive
23  criminal history record, but she does have extensive ties to
24  this record -- in her record. Her criminal history record
25  reflects that she has not had any incidents other than the

present incident since approximately 2014.

I do believe that both defendants pose a risk of flight and a danger to the community. But I would -- I would request certain conditions. And if those conditions were to be set, the government would consent to release under a signature bond.

THE COURT: What are those conditions that you propose?

MR. FELICETTA: The government proposes the following conditions as to both defendants; first, that each of them sign a $50,000 signature bond; secondly, that they be restricted in their travel to only the Middle District of Florida; that they live at the residence approved by pretrial services.

I'm recommending that they surrender all passports. It's the government's belief that Mr. Catalano is the only one who has a U.S. passport and that he's brought that with him here today.

I'm requesting and recommending that both defendants be screened for mental health and also be screened for substance abuse and that they follow through with any treatment recommended under the supervision of pretrial services.

I think the report speaks for itself with regard to both of those requests as to why it would be appropriate in this case.

And, further, Your Honor, I'm requesting and

1  recommending that there be an order that the defendants have no
2  contact with any witnesses in this case.
3         Through the discovery process the defendants will
4  learn of a number of witnesses who cooperated with the
5  government.  These are people who are known to the defendants.
6         And while they may have moved and no longer live in
7  the area where this offense originated in Citrus County, I'm
8  nevertheless requesting that the condition of release be they
9  have no contact with any witnesses in this case.
10         THE COURT:  All right.  Mr. Nielsen, what do you say
11  to all that, sir?
12         MR. NIELSEN:  Good afternoon, Judge.  Well, the
13  defense, of course, is grateful that the government's taken the
14  position for the release and signature bond.  And these other
15  requests are acceptable.
16         But my client did want to ask, Judge -- or I'm asking
17  on his behalf -- if it's possible, due -- and I'll condition it
18  like this, he is 54 years old.  This is a white-collar crime
19  that -- I believe the allegations are -- okay, from three years
20  ago.
21         He did self-surrender to the jurisdiction for these
22  proceedings today.  And he is disabled.  And what he's hoping
23  is that it's possible to do the signature bond and the other
24  requested conditions, but not have to -- while the case is
25  pending, be under supervision of pretrial services.

We don't believe he's any type of risk of flight, Judge. And the report indicates that as far as him and substance abuse, it was many, many years ago. So I don't think there would be a need for any type of, you know, testing in that regard.

So, you know, he obviously wants to be released. He'll accept your decision if you say no. But he was hoping maybe all the same components, but not have to be reporting while the case is pending to pretrial services.

THE COURT: All right. Ms. Bird?

MS. BIRD: Your Honor, my client does not object to the conditions proposed by the government. The only matter that might come up is they have a minor grandchild who they take care of who has doctors' appointments that are possibly outside of the Middle District.

So I advised my client I would mention it and that -- I think if she gets permission from pretrial services, that's sufficient. But I wasn't sure how the Court would want to handle that, if at all.

THE COURT: Where are the doctors located?

(Counsel confers with defendant.)

MS. BIRD: The Autism Center in Palm Harbor.

THE COURT: I'm sorry, where?

MS. BIRD: Palm Harbor. I don't know where that is.

MR. FELICETTA: It's in Pinellas County, Your Honor.

1           MS. BIRD:  Pinellas County.

2           MR. FELICETTA:  It's within the district.

3           THE COURT:  Well, it's in the Middle District.

4           MS. BIRD:  Okay.

5       (Counsel confers with defendant.)

6           MR. FELICETTA:  Judge, I'm sorry.  I wanted to add
7  one further request in terms of the conditions of release.  I
8  don't believe this is an issue, but that there be no firearms
9  in the approved residence.  And I don't believe there are any.
10 But I just wanted to make that as a -- a request of the
11 government that it be a condition.

12          MR. NIELSEN:  No objection, Your Honor.

13          THE COURT:  All right.  Can I ask you a question?

14      (Discussion off record.)

15          THE COURT:  What is the amount of loss,
16 Mr. Felicetta?

17          MR. FELICETTA:  The total amount of loss is $18,986.

18          THE COURT:  82,000, you said?

19          MR. FELICETTA:  I'm sorry.  18,986, Judge.

20      (Counsel confers with defendant.)

21          THE COURT:  Ms. Bird, do you need another minute?

22          MS. BIRD:  Pardon me?

23          THE COURT:  Do you need another minute?

24          MS. BIRD:  No.  No, Your Honor.  I'm ready whenever
25 you are.  I was just talking about the case.

1    THE COURT:  Okay.  The Court will agree, and without
2    objection from either defendant, to the execution of a
3    signature bond in the amount of $50,000 as to each defendant,
4    which should be -- or, rather, should reasonably assure the
5    appearance of each defendant, and be a sufficient deterrent to
6    provide that neither defendant endangered the community in any
7    way.
8         You do not need to put any money down for that, but
9    that amount, you should know, is subject to forfeiture to the
10   United States if you fail to comply with the conditions of your
11   bond.
12        Standard conditions of release also apply.  You shall
13   not commit any federal, state, or criminal -- or local crimes.
14   You shall not travel outside the Middle District of Florida
15   except if expressly approved in advance by your pretrial
16   services officer.  You shall maintain your current residence.
17        And, of course, you'll need to notify pretrial
18   services of any change or any reason for any change or needed
19   change in your residence not later than 72 hours.
20        You shall have no contact with any victims or
21   witnesses in this case.  You shall not possess or reside in a
22   home that has any firearms, explosive devices, or other
23   weapons.  You cannot use illegal drugs or excessive alcohol.
24        You shall submit to random urinalysis and drug
25   testing as directed.  And you shall submit to an evaluation for

substance and mental health treatment as directed by pretrial services.  You shall cooperate at all times with pretrial services and report as directed by the pretrial services officer.

If you fail to comply with the conditions of your bond, you should know -- oh, I didn't say passport?  You shall surrender -- you shall both surrender your passport and not obtain any new travel documents.

If you fail to comply with any conditions of your bond, you should expect the issuance of an arrest warrant, the revocation of your bond, and an order of detention, which means you would remain in custody until the case is resolved.  You could be prosecuted for contempt of Court, which could include additional imprisonment.

If you commit an offense while on release, that could result in additional imprisonment.  If you fail to appear after your release or to surrender for service of a sentence, if you're convicted and sentenced, you could be punished for that as well.

Federal law makes it a crime to obstruct a criminal investigation, to tamper with or intimidate, or attempt to tamper with or intimidate any witness, victim, juror, informant, or officer of the Court.  And the penalties for that are significant.

Ms. Catalano, do you understand all of that?

```
 1              DEFENDANT C. CATALANO:  Yes, Your Honor, I do.
 2              THE COURT:  Mr. Castalano [sic]?
 3              DEFENDANT J. CATALANO:  Yes, Your Honor.
 4              THE COURT:  Oh, Catalano.  Sorry.
 5              And so, Mr. Nielsen, of course, your client will be
 6   monitored by pretrial services and required to report and
 7   comply.
 8              MR. NIELSEN:  I understand, Your Honor.
 9              THE COURT:  Ms. Bird, is there anything else I need
10   to take up for Ms. Catalano?
11              MS. BIRD:  No, Your Honor, not at this time.
12              THE COURT:  Mr. Nielsen, for your client,
13   Mr. Catalano?
14              MR. NIELSEN:  Judge, if I could have one second, I
15   think he's asking me a question.
16          (Counsel confers with defendant.)
17              MR. NIELSEN:  The only thing is the reporting.  I
18   know they live about an hour and 45 minutes from here.  So
19   would they be actually supervised by someone in the office in
20   the Tampa area?  Or would they really be coming back here for
21   meetings and stuff?
22              THE COURT:  I don't -- I don't know.
23              MR. NIELSEN:  That's up to pretrial?
24          (Inaudible).
25              MR. NIELSEN:  Okay.  All right.
```

1  THE COURT:  Would they -- if they had to report -- I
2  guess they'll be told where they have to report, whether it's
3  to a Tampa officer or to you.
4  PRETRIAL SERVICES OFFICER:  (Inaudible.)
5  MR. NIELSEN:  Okay.  All right.
6  Thank you, Your Honor.
7  THE COURT:  Okay.  Mr. Felicetta, anything else for
8  the United States?
9  MR. FELICETTA:  Judge, I just wanted to put on the
10 record that this issue regarding Mr. Catalano reaching out to
11 the government directly, and also the same email to the Court,
12 I believe --
13 THE COURT:  Yes.  I forgot to mention that.  The
14 Court did receive from the defendant, Mr. Catalano, through
15 what is referred to as a chambers email box -- so an email box
16 where people can email the chambers.
17 And typically lawyers email it if they're emailing a
18 sample order or something.  But it's not a secret email
19 address.  And so it can be obtained.  And Mr. Catalano did
20 email the Court.  And that email, I'm told, was also sent to
21 you, Mr. Felicetta, and you provided it to defense counsel?
22 MR. FELICETTA:  I did, Your Honor.  I did not respond
23 to Mr. Catalano.  I forwarded the email to the attorneys who
24 are present here today, once the Court appointed them -- or --
25 or in anticipation of their appointment.

```
 1            Once they were named in an email from the Court, I
 2   then forwarded them this email so they had a copy of it.  But I
 3   just wanted to put on the record that I had received it, I
 4   hadn't responded to it, and that I don't intend to communicate
 5   directly with the defendant.
 6            THE COURT:  And that's true for both parties'
 7   benefits.  It is a formal requirement.  But any communication
 8   with the Court once a case is pending would be made by motion
 9   through your attorney.
10            Anything else, Mr. Felicetta?
11            MR. FELICETTA:  No, Your Honor.  Thank you.
12            THE COURT:  All right.  Thank you, everyone.  We'll
13   be in recess.
14            MR. NIELSEN:  Thank you, sir.
15            THE COURT:  All rise.
16      (The digitally recorded proceedings concluded at
17   12:24 p.m.)
18                              - - -
```

## CERTIFICATE

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )

      I hereby certify that the foregoing transcript is a true and correct computer-aided transcription from the official electronic sound recording of the proceedings in the above-entitled matter.

      DATED this 7th day of April, 2021.


      s/Shannon M. Bishop

      Shannon M. Bishop, RDR, CRR, CRC